**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Sergio Enrique Soto-Hopkins, ) | No. CV 15-541-TUC-LAB |
| ) | |
| Plaintiff, ) | **ORDER** |
| ) | |
| vs. ) | |
| ) | |
| Carolyn W. Colvin, Commissioner of ) | |
| Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |

The plaintiff filed this action for review of the final decision of the Commissioner for Social Security pursuant to 42 U.S.C. § 405(g). (Doc. 1)

The Magistrate Judge presides over this case pursuant to 28 U.S.C. § 636(c) having received the written consent of both parties. (Doc. 14)

The court finds the ALJ's decision that Soto-Hopkins can return to his previous work as a cook is supported by substantial evidence and free from legal error.

PROCEDURAL HISTORY

On January 31, 2012, Soto-Hopkins filed for disability insurance benefits pursuant to Title II of the Social Security Act. (Tr. 16) He alleged disability beginning on January 1, 2009, due to "chronic sleep disorder, depression, anxiety, [and] seizures." (Tr. 156) His claim was denied initially and upon reconsideration. (Tr. 93-96; 98-100) Soto-Hopkins requested review and appeared without counsel at a hearing before Administrative Law Judge (ALJ) Larry

Johnson on November 21, 2013. (Tr. 38) In his decision, dated May 16, 2014, the ALJ found Soto-Hopkins was not disabled because he could return to his past work as a cook. (Tr. 16-31)

Soto-Hopkins appealed and submitted an additional exhibit, but the Appeals Council denied review making the decision of the ALJ the final decision of the Commissioner. (Tr. 1-6) Soto-Hopkins subsequently filed this action appealing that final decision. (Doc. 1) He argues the ALJ erred at step two of the disability analysis, erred at step three, failed to properly credit his subjective testimony of disability, and failed to properly evaluate his residual functional capacity. (Doc. 19)

Claimant's Work History and Medical History

Soto-Hopkins worked as a cook from 1990 to 2008. (Tr. 157) His last job was working as a cook at Davis-Monthan Air Force Base. (Tr. 50) When his six-month contract ended, he "was tired of cooking and [] wanted to do something else." (Tr. 51) He sought work elsewhere and has had "eight or ten" interviews, but he has not found another job. (Tr. 51) He received unemployment benefit for "three months maybe." (Tr. 51) He states he cannot work now because he is "confused," and he does not "have the concentration." (Tr. 52)

In June of 2012, Vivienne J. Kattapong, M.D., reviewed the medical record for the disability determination service and offered an opinion of Soto-Hopkins's physical limitations. She noted that the medical record indicates that Soto-Hopkins has pseudoseizures but "[h]e is not being treated for epileptic seizures or for sleep apnea." (Tr. 72) She concluded, "Work-related limitations stem largely from mental issues." *Id*. "No severe somatic [medically determinable impairment] has been established." *Id*.

In June of 2012, Jaine Foster-Valdez, Ph.D., reviewed the medical record for the disability determination service and offered an opinion of Soto-Hopkins's mental limitations. She opined that Soto-Hopkins has an affective disorder and personality disorder. (Tr. 72-73) She evaluated his "B" listing criteria, which gauge the severity of his mental impairment. She found he has no restrictions of his daily activities; he has mild difficulties in maintaining social functioning; he has moderate difficulties in maintaining concentration, persistence or pace; and

1 there is insufficient evidence of decompensation. (Tr. 73)  Foster-Valdez further opined that
2 the medical evidence did not establish the presence of the "C" criteria, which are an alternative
3 gauge of the extent of his mental impairment. (Tr. 73)  She opined that "[Claimant] appears
4 invested in presenting a negative impression but [the medical record] reflects that when
5 [Claimant] is compliant [with treatment], attending [appointments] regularly and taking
6 [prescriptions] as written, he does well. (Tr. 73)

7 Foster-Valdez then analyzed Soto-Hopkins's mental residual functional capacity (RFC).
8 She found he is moderately limited in his ability to interact appropriately with the general
9 public; moderately limited in his ability to accept instructions and respond appropriately to
10 criticism from supervisors; moderately limited in his ability to get along with co-workers; and
11 moderately limited in his ability to respond to changes in the work setting. (Tr. 75-76)  In
12 essence, he is "easily stressed" and "tends to become irritable and demanding." (Tr. 76)  He is
13 "[l]ikely to do best [with] limited social interaction." (Tr. 76)

14 In March of 2013, in response to Soto-Hopkins's request for reconsideration, Stephen
15 Bailey, Ed.D., reviewed the medical record and Foster-Valdez's opinion.  He wrote: "On
16 [r]econ[sideration] the previous decision is endorsed as written." (Doc. 87)

17 Soto-Hopkins appeared without counsel before the ALJ on November 21, 2013. (Tr. 38)
18 He testified that he last worked as a cook at Davis-Monthan Air Force Base. (Tr. 50-51)  He
19 had two six-month contracts there. (Tr. 51)  He stated, "I was tired of cooking and I wanted to
20 do something else." (Tr. 51)  He continued, "I've been looking for a job." (Tr. 51)  He has had
21 "about maybe eight, ten" job interviews, but he has not landed another job. (Tr. 51)  He
22 collected unemployment benefits for "three months maybe." (Tr. 52)

23 Soto-Hopkins testified that he cannot work because he lacks concentration and gets
24 confused. (Tr. 52)  He stated, "What I'm trying to say [is] I got real tired of cooking," (Tr. 53)
25 "I wanted to do something else more easy, not the stress, because cooking is a lot of worry,
26 you're doing lasagna, and then you're doing this and you're doing that." (Tr. 53)

27
28

1   Soto-Hopkins explained that he lived in transitional housing at The Living Center. (Tr.
2   55) When he was there, he volunteered as a cook at their Turtle Bay Café. (Tr. 55) They had
3   a crock pot but not a proper stove. (Tr. 55)

4   Soto-Hopkins further testified that he suffers from panic attacks and had them before
5   when he worked at Davis-Monthan. (Tr. 56) They last from 15 to 30 minutes. (Tr. 59) His
6   medication helps "sometimes." (Tr. 59) He has chest pains often and can't sleep well. (Tr. 56)
7   He also suffers from sleep apnea "since I was very, very young." (Tr. 58)

## CLAIM EVALUATION

10   Social Security Administration (SSA) regulations require that disability claims be
11   evaluated pursuant to a five-step sequential process. 20 C.F.R. § 404.1520; *Baxter v. Sullivan,*
12   923 F.2d 1391, 1395 (9th Cir. 1991). The first step requires a determination of whether the
13   claimant is engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4). If so, then the
14   claimant is not disabled, and benefits are denied. *Id.*

15   If the claimant is not engaged in substantial gainful activity, the ALJ proceeds to step
16   two, which requires a determination of whether the claimant has a "medically severe impairment
17   or combination of impairments." 20 C.F.R. § 404.1520(a)(4). In making a determination at step
18   two, the ALJ uses medical evidence to consider whether the claimant's impairment more than
19   minimally limits or restricts his or her "physical or mental ability to do basic work activities."
20   *Id*. If the ALJ concludes the impairment is not severe, the claim is denied. *Id*.

21   Upon a finding of severity, the ALJ proceeds to step three, which requires a
22   determination of whether the impairment meets or equals one of several listed impairments that
23   the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20
24   C.F.R. § 404.1520(a)(4); 20 C.F.R. Pt. 404, Subpt. P, App.1. If the claimant's impairment
25   meets or equals one of the listed impairments, then the claimant is presumed to be disabled, and
26   no further inquiry is necessary. *Ramirez v Shalala,* 8 F.3d 1449, 1452 (9th Cir. 1993). If the
27   claimant's impairment does not meet or equal a listed impairment, evaluation proceeds to the
28   next step.

1   The fourth step requires the ALJ to consider whether the claimant has sufficient residual functional capacity (RFC)[1] to perform past work. 20 C.F.R. § 404.1520(a)(4). If yes, then the claim is denied. *Id*. If the claimant cannot perform any past work, then the ALJ must move to the fifth step, which requires consideration of the claimant's RFC to perform other substantial gainful work in the national economy in view of the claimant's age, education, and work experience. 20 C.F.R. § 404.1520(a)(4).

### The ALJ's Findings

At step one of the disability analysis, the ALJ found Soto-Hopkins "did not engage in substantial gainful activity during the period from his alleged onset date of January 1, 2009 through his date last insured of December 31, 2013." (Tr. 18) At step two, he found Soto-Hopkins "had the following severe impairments: anxiety, depression, and a sleep disorder." (Tr. 29)

At step three, the ALJ found Soto-Hopkins "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R., Part 404, Subpart P, Appendix 1." (Tr. 19)

The ALJ then analyzed Soto-Hopkins's residual functional capacity (RFC). He found "the claimant had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant can understand, remember and carry out simple 1-2 step work related instructions; he could make commensurate work decisions and adjust to changes in the simple or routine work setting and he could work with and around others." (Tr. 20)

At step four, the ALJ found Soto-Hopkins was "capable of performing past relevant work as a cook." (Tr. 30) Accordingly, he found that Soto-Hopkins was not disabled from January 1, 2009, the alleged onset date, through December 31, 2013, the date last insured. (Tr. 31)

---

[1] Residual functional capacity is defined as that which an individual can still do despite his or her limitations. 20 C.F.R. §§ 404.1545, 416.945.

- 5 -

## STANDARD OF REVIEW

An individual is entitled to disability benefits if he or she demonstrates, through medically acceptable clinical or laboratory standards, an inability to engage in substantial gainful activity due to a physical or mental impairment that can be expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A). "[A] claimant will be found disabled only if the impairment is so severe that, considering age, education, and work experience, that person cannot engage in any other kind of substantial gainful work which exists in the national economy." *Penny v. Sullivan,* 2 F.3d 953, 956 (9th Cir. 1993).

The findings of the Commissioner are meant to be conclusive. 42 U.S.C. § 405(g). The decision to deny benefits "should be upheld unless it contains legal error or is not supported by substantial evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* It is "more than a mere scintilla but less than a preponderance." *Id.*

"Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Orn*, 495 F.3d at 630. "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Id.*

The ALJ need not accept the claimant's subjective testimony of disability, but if he decides to reject it, "[]he must provide specific, cogent reasons for the disbelief." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996). "Unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing." *Id.* "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.*

## DISCUSSION

1    Soto-Hopkins argues first that the ALJ failed at step two of the disability determination process to include his bipolar II disorder, his back problems, and his knee problem in the listing of his severe impairments. (Doc. 19, pp. 9-10)

"At step two of the five-step sequential inquiry, the Commissioner determines whether the claimant has a medically severe impairment or combination of impairments." *Smolen v. Chater*, 80 F.3d 1273, 1289-90 (9th Cir. 1996). "[A]n impairment is not severe if it does not significantly limit the claimant's physical ability to do basic work activities." *Id.* at 1290. "Basic work activities" are "the abilities and aptitudes necessary to do most jobs" such as "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling." 20 C.F.R. § 404.1521(b).

"[T]he step-two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen*, 80 F.3d at 1290. "An impairment or combination of impairments can be found not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." *Id.* (punctuation modified).

At step four, the ALJ must consider all of the claimant's impairments together, the severe and the non-severe, and determine the claimant's residual functional capacity. 20 C.F.R. § 404.1545(e).

In this case, the ALJ found at step two that Soto-Hopkins had the "following severe impairments: anxiety, depression, and a sleep disorder." (Tr. 18) Soto-Hopkins argues that the ALJ should have included on that list his bipolar II disorder, his back problems, and his knee problem. (Doc. 19, pp. 9-10)

The court finds the ALJ's failure to include the bipolar II diagnosis at step two was, at most, harmless error. The ALJ noted a diagnosis of "major depressive disorder and bipolar II disorder." (Tr. 25, 26); 1F/100; 1F/203, 204; 2F/5; 2F/26 He acknowledged that Soto-Hopkins has been prescribed hydroxyzine pamoate, Seroquel, and lorazepam to improve his mental condition. (Tr. 29) At step two, however, he stated that Soto-Hopkins has the severe impairments of anxiety and depression without including his diagnosis of bipolar II disorder. He did not explain this omission. The ALJ did, however, consider all of Soto-Hopkins's mental

- 7 -

limitations in his RFC analysis. Accordingly, any error at step two was harmless. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

The ALJ stated explicitly why he did not include Soto-Hopkins's alleged back problems at step two. He explained that, "[a]lthough the claimant testified that he had back problems, there was no medical evidence to support that alleged impairment." (Tr. 18) "Additionally, the claimant testified that he was not being treated for his back." *Id.* Accordingly, the ALJ found that Soto-Hopkins's back problems were not a severe impairment. *Id.*

Soto-Hopkins does not direct the court to any place in the medical record where a diagnosis or treatment for back problems may be found. (Tr. 19, pp. 9-10) The Commissioner notes that an Axis III entry for "chronic back pain" is recorded in a progress note from La Frontera Center. (Tr. 439) La Frontera, however, is a mental health clinic, and presumably the author of the note was not offering a diagnosis but simply memorializing Soto-Hopkins's medical history as he related it. There is no evidence in the medical record that Soto-Hopkins has been diagnosed with or treated for back pain by an acceptable medical source. See 20 C.F.R. § 404.1513(a)  (An impairment must be established by an acceptable medical source such as a licensed physician.). Soto-Hopkins has not established error here.

Finally Soto-Hopkins argues the ALJ should have included his knee problem in the step two list of severe impairments. The ALJ did not explain in his decision why he believed this was not a severe impairment. It may be because Kattapong stated that "[n]o severe somatic [medically determinable impairment] has been established," and the ALJ gave her opinion great weight. (Tr. 28, 72)

Soto-Hopkins does not direct the court to any place in the medical record where a diagnosis or treatment for knee problems may be found. (Tr. 19, pp. 9-10) The Commissioner notes that there are a number of places in the medical record where an Axis III entry for "Torn ligament, L knee Healing" is recorded in a progress note from La Frontera Center. (Tr. 244, 252, 260, 276, 292, 306, 322, 325, 331, 334) La Frontera, however, is a mental health clinic and presumably the author of the note was not offering a diagnosis but simply memorializing Soto-Hopkins's medical history. There does not appear to be any place in the medical record that

- 8 -

documents a diagnosis or treatment for a torn knee ligament. Accordingly, Soto-Hopkins has not established error here.

Soto-Hopkins argues that if the evidence in the medical record is insufficient to establish these severe impairments, the ALJ should have ordered a consultive medical examination.

The ALJ has a "special duty to develop the record fully and fairly and to ensure that the claimant's interests are considered." *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001). And under certain circumstances, the ALJ will order that the claimant undergo a consultative medical examination. *See* 20 C.F.R. § 404.1519a ("If we cannot get the information we need from your medical sources, we may decide to purchase a consultative examination."). For example, the ALJ "may purchase a consultative examination to try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow [him] to make a determination or decision on [the] claim." 20 C.F.R. § 404.1519a(b). It does not appear, however, that either situation presents itself here. Moreover, Soto-Hopkins's suggestion that the ALJ should order a consultative examination to hunt down every possible medical impairment would run afoul of the rule that the *claimant* has the burden to establish disability. *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001). The ALJ's failure to order a consultative medical examination was not legal error.

Soto-Hopkins further argues the ALJ erred at step three of the disability analysis by failing to find that his mental impairment meets the listed criteria for an affective disorder at 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.04.

"In order to meet a listing in Appendix 1 for a mental disorder, a claimant must satisfy criteria in paragraph A of the listings, which medically substantiate the presence of a mental disorder, and the criteria in paragraphs B or C, which describe the functional limitations associated with the disorder which are incompatible with the ability to work." *Holohan v. Massanari*, 246 F.3d 1195, 1203 (9th Cir. 2001). The Commissioner does not dispute Soto-Hopkins's claim that he has a mental impairment listed in paragraph A – affective disorder.

"In order to satisfy the criteria in paragraph B, [the claimant's] paragraph A impairments must result in at least two of the following:

- 9 -

> 1. Marked restriction in the activities of daily living; or
>
> 2. Marked difficulties in maintaining social functioning; or
>
> 3. Deficiencies of concentration, persistence or pace resulting in frequent failure to complete tasks in a timely manner (in work settings or elsewhere); or
>
> 4. Repeated episodes of deterioration or decompensation in work or work-like settings which cause the individual to withdraw from that situation or experience exacerbation of signs and symptoms (which may include deterioration of adaptive behaviors)."

*Holohan v. Massanari*, 246 F.3d 1195, 1203-04 (9th Cir. 2001) (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.04). To satisfy the paragraph C criteria, the claimant must show:

> Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:
>
> 1. Repeated episodes of decompensation, each of extended duration; or
>
> 2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
>
> 3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 12.04.

The ALJ analyzed the paragraph B criteria by referring to the statements Soto-Hopkins made in the Function Report he submitted to the Social Security Administration in February of 2013. (Tr. 19, 202) The ALJ found that Soto-Hopkins had no restriction in the activities of daily living. (Tr. 19) Soto-Hopkins stated that "he had no problem with getting dressed or feeding himself." (Tr. 19, 198) He "helped to take care of his mother, sometimes he would help her to bathe and that he went to the store for her and [helped] by going with her to pay the bills." (Tr. 19, 197) He stated "he could go shopping in stores for food or clothes." (Tr. 19, 199)

The ALJ found Soto-Hopkins had mild difficulties in social functioning. (Tr. 19) Soto-Hopkins stated "he had problems getting along with family, friends and neighbors." (Tr. 19, 201) "He had anxiety being in a large group of people." (Tr. 19, 201)

1 Soto-Hopkins had moderate difficulties with regard to concentration, persistence, or pace. (Tr. 20) He stated "he could pay attention for about 15 minutes and that he needed help or reminders for taking his medication." (Tr. 20, 201) "He had short term memory loss, and that he did not finish completing tasks and he had a lack of concentration." (Tr. 20, 201)

The ALJ further found that Soto-Hopkins "has experienced no episodes of decompensation, which have been of extended duration." (Tr. 20) He concluded, "Because the claimant's mental impairment did not cause at least two 'marked' limitations or one 'marked limitation' and 'repeated' episodes of decompensation, each of extended duration, the 'paragraph B' criteria were not satisfied." (Tr. 20)

Finally the ALJ considered the "paragraph C" criteria. He found in conclusory fashion that Soto-Hopkins's mental illness does not satisfy these criteria. (Tr. 20) The ALJ did not explain his reasoning here, but it appears that he adopted the analysis of Jaine Foster-Valdez, Ph.D. Foster-Valdez examined the medical record in detail and explained why Soto-Hopkins's mental illness does not satisfy the "paragraph B" and "paragraph C" criteria. The ALJ stated that he gave "[g]reat weight" to Foster-Valdez's opinion because "it is well supported by explanation and by the medical evidence." (Tr. 28, 73-74)

The ALJ provided substantial evidence to support his finding at step three of the disability analysis that Soto-Hopkins's mental impairment does not meet the listed criteria for an affective disorder at 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.04.

Soto-Hopkins argues that the medical record is replete with evidence showing that his mental impairment *does* meet the listed criteria. But while that might be true, it is somewhat beside the point. The ALJ's opinion need not be supported by overwhelming evidence or even a preponderance of the evidence. It is sufficient if it is supported by substantial evidence. And here it is. *See also Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) ("The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation."). The ALJ did not err at step three of the disability analysis.

1   Soto-Hopkins further argues the ALJ's evaluation of his residual functional capacity
2   (RFC) was error. Specifically, he argues that the ALJ failed to properly credit his subjective
3   testimony of disability.

4   The ALJ is not required to accept a claimant's subjective testimony of disability and may
5   discount it if he provides clear and convincing reasons for doing so. *See also Molina v. Astrue*,
6   674 F.3d 1104, 1112 (9th Cir. 2012) ("[T]he ALJ is not required to believe every allegation of
7   disabling pain, or else disability benefits would be available for the asking.") (punctuation
8   modified). "In evaluating the claimant's testimony, the ALJ may use ordinary techniques of
9   credibility evaluation." *Molina v. Astrue*, 674 F.3d 1104, 1112–13 (9th Cir. 2012) (punctuation
10  modified). "For instance, the ALJ may consider inconsistencies either in the claimant's
11  testimony or between the testimony and the claimant's conduct . . . unexplained or inadequately
12  explained failure to seek treatment or to follow a prescribed course of treatment . . . and whether
13  the claimant engages in daily activities inconsistent with the alleged symptoms." *Id.*

14  In this case, the ALJ explained that he discounted Soto-Hopkins's subjective testimony
15  of disability in part because the record contains many references to Soto-Hopkins working or
16  seeking work. Soto-Hopkins testified at the hearing "that he had applied for different jobs, but
17  that he was never called back." (Tr. 21) The medical record indicates that he worked as a
18  volunteer on a daily basis at The Living Center and Turtle Bay Café. (Tr. 22) On June 30,
19  2009, Soto-Hopkins reported that he was working with his ex-wife at an assisted living home.
20  (Tr. 23) On January 4, 2010, he stated he "would like to see if the employment team could do
21  something for him as far as hours, but he was happy with his job now, and it did not stress him
22  out." (Tr. 23) On May 25, 2010, he stated, "He was getting along better with his ex-wife, and
23  helping her with her business. He did the cooking." (Tr. 24)

24  The ALJ noted that Soto-Hopkins left his job at Davis-Monthan when his contract
25  expired and not for reasons related to his disability. (Tr. 21) He further noted that Soto-
26  Hopkins's testimony at the 2013 hearing was not entirely consistent with the medical record.
27  Soto-Hopkins stated that his last job was at Davis-Monthan in 2008, but there is evidence that
28  he was working as a caregiver in July of 2011. (Tr. 21); (Tr. 38); (Tr. 50) The ALJ found that

while this inconsistency "may not be the result of a conscious intention to mislead, nevertheless, the inconsistencies suggest that the information provided by the claimant generally may not be entirely reliable, which weakens his credibility." (Tr. 21)  The ALJ further observed that Soto-Hopkins "canceled or failed to show up for doctor appointments on a number of occasions which suggest that the symptoms may not have been as serious as has been alleged. . . ."  (Tr. 22)

The ALJ also found that Soto-Hopkins's daily activities are not as limited as one would expect if he were indeed disabled.  "The claimant stated on the . . . function report that he took care of his mother and sometimes he helped to bathe her."  (Tr. 21)  "He stated he took her to the store and [helped by] going with her to pay bills."  (Tr. 21); (Tr. 197)  "He stated he could prepare his own meals every other day."  (Tr. 21); (Tr. 198)  "He stated he could walk and use public transportation, and he could go shopping in stores for food and clothes."  (Tr. 21); (Tr. 199)  Household activities are not generally performed with the same persistence and pace required in the workplace, but they may be considered by the ALJ in evaluating a claimant's subjective testimony of disability.  *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d, 595, 600 (9th Cir. 1999);  *see, e.g., Curry v. Sullivan*,  925 F.2d 1127, 1130 (9th Cir. 1990) (Where the claimant "indicated that she was able to take care of her personal needs, prepare easy meals, do light housework, and shop for some groceries," the court found that "[a]n ability to perform such activities may be seen as inconsistent with the presence of a condition which would preclude all work activity.").

Soto-Hopkins argues that the medical record is replete with evidence showing that his daily activities are more restricted than the ALJ believes.  But as this court noted above, the issue is not whether the medical evidence could support a different conclusion.  This issue is whether the ALJ's conclusion is supported by substantial evidence.  And here it is.  *See also Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

The ALJ discounted Soto-Hopkins's subjective testimony of disability because the record contains numerous references to his seeking work or actually working.  He has a record of failing to show up for his medical appointments.  And his record of daily activity does not

- 13 -

1 support his claim to disability. The ALJ provided clear and convincing evidence to support his
2 decision to discount Soto-Hopkins's subjective testimony of disability.

3 The ALJ instead chose to adopt the opinions of the disability determination
4 psychologists, Jaine Foster-Valdez, Ph.D., and Stephen Bailey, Ed.D., who opined that Soto-
5 Hopkins's psychological impairments are moderately limiting but not disabling. (Tr. 28-29)
6 The ALJ accorded these opinions "great weight" because they were "well supported by
7 explanation and by the medical evidence." (Tr. 29)

8 The ALJ's reliance on the opinions of Foster-Valdez and Bailey was proper. The ALJ
9 is not a medical expert and may not offer his own expert evaluation of the raw medical data.
10 *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975); *Liskowitz v. Astrue*, 559 F.3d 736,
11 741(7th Cir. 2009); *Smith v. Colvin*, 2016 WL 4059627, at *3 (C.D. Cal. 2016); *see also*
12 *Dumond v. Commissioner of Social Sec.*, 875 F.Supp.2d 500, 509 (W.D.Pa. 2012) (rejecting
13 the Commissioner's argument that "an ALJ is not required to rely on a medical opinion in
14 formulating a claimant's RFC."). Accordingly, he must rely on medical experts to evaluate the
15 claimant's functional limitations. *Id.* Here, the ALJ's reliance on the opinions of Foster-Valdez
16 and Bailey is not surprising. Theirs are the only opinions in the record from an "acceptable
17 medical source." 20 C.F.R. § 404.1513. The ALJ's reliance on their opinions was not error.
18 *See Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) ("The opinions of non-treating or
19 non-examining physicians may also serve as substantial evidence when the opinions are
20 consistent with independent clinical findings or other evidence in the record.").

21 The record also contains an opinion from Yassar Canchola, BHP - LISAC, a behavioral
22 health professional and licensed independent substance abuse counselor, and an opinion from
23 Karen Charles, M.S., C.R.C., a certified rehabilitation counselor, who both opined that Soto-
24 Hopkins has serious mental impairments. (Tr. 29-30) Neither Canchola nor Charles, however,
25 is a medical doctor, so their opinions are not accorded the same level of deference. 20 C.F.R.
26 § 404.1513; *see also Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

27 The ALJ's decision to discount Soto-Hopkins's subjective opinion of disability was
28 supported by clear and convincing evidence. *See also Carmickle v. Commissioner, Social Sec.*

*Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) ("Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony."). His assessment of Soto-Hopkins's RFC is supported by substantial evidence.

The court finds the ALJ's decision is supported by substantial evidence and free from legal error. Accordingly,

IT IS ORDERED that the Commissioner's final decision in this matter is AFFIRMED. The Clerk of the Court is instructed to enter judgment accordingly and close this case.

DATED this 14th day of September, 2016.

*Leslie A. Bowman*
Leslie A. Bowman
United States Magistrate Judge

Case 4:15-cv-00541-LAB   Document 22   Filed 09/14/16   Page 16 of 16